UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRAULIO THORNE, ON BEHALF OF HIMSELF
AND ALL OTHER PERSONS SIMILARLY
SITUATED,

               Plaintiffs,

               v.

CAPITAL MUSIC GEAR LLC,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No.: 1:23-cv-776

 

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

GOTTLIEB & ASSOCIATES

Jeffrey M. Gottlieb (JG-7905)
Michael A. LaBollita (ML-9985)
Dana L. Gottlieb (DG-6151)
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
Jeffrey@gottlieb.legal

*Attorneys for Plaintiffs*

## **<u>TABLE OF CONTENTS</u>**

**<u>Pages</u>**

1

**I.**    PRELIMINARY STATEMENT

2

**II.**    STATEMENT OF FACTS

3

**III.**    LEGAL STANDARD 12(b)(1)

5

**IV.**    LEGAL STANDARD 12(b)(6)

5

**V.**    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS MATTER

5

    a.  <u>The Plaintiff Has Standing in this Action Because He Suffered A Concrete and</u>
       <u>Particularized Injury.</u>

7

    b.  <u>The Defendant's Prior Litigation History is Irrelevant to the Issue of Standing.</u>

8

**VI.**    THE PLAINTIFF'S CLAIMS ARE NOT MOOT

9

**VII.**    THE ADA APPLIES TO WEBSITES AND THE DEFENDANT'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION

12

**VIII.**    ALTERNATIVE MEANS OF ACCESS DO NOT SATISFY THE ADA'S REQUIREMENTS OF FULL AND EQUAL ACCESS

13

**IX.**    PLAINTIFF'S STATE AND CITY LAW CLAIMS SHOULD SURVIVE WITH THE ADA CLAIM

14

**X.**    CONCLUSION

# TABLE OF
# AUTHORITIES

**Cases**                                                                  **Pages**

*Amidax Trading Grp. v. S.W.I.F.T. Scrl,*                                   4
671 F.3d 140, 145 (2d Cir. 2011)


*Andrews v. Blick Art Materials, LLC,*                                     10, 14
268 F. Supp. 3d 381, 393 (E.D.N.Y. 2017)


*Arbaugh v. Y & H Corp.,*                                                   3
546 U.S. 500, 506, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)

                                                                           5
*Ashcroft v. Iqbal,*
556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)


*Baisch v. Gallina,*                                                       6
346 F.3d 366, 372 (2d Cir. 2003)


*Baughman v. Walt Disney World Co.,*                                       7
685 F.3d 1131 (9th Cir. 2012).

                                                                           5
*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)


*Camacho v. Vanderbilt Univ.,*                                             4, 7
2019 Us Dist Lexis 209202, At *23-24 [SDNY Dec. 4, 2019]


*Camarillo v. Carrols Corp.,*                                              5
518 F.3d 153, 156 (2d Cir. 2008)

                                                                           3
*Carter v. Healthport Techs., LLC,*
822 F.3d 47, 55 (2d Cir. 2016)

                                                                           4, 10
*Chalas v. Barlean's Organic Oils, LLC,*
2022 US Dist LEXIS 211816 [SDNY Nov. 22, 2022, No. 22 Civ 04178 (CM)]


*Chalas v Pork King Good,*                                                 11.
2023 US Dist LEXIS 79100, at *8-9 [SDNY May 5, 2023, No. 22-cv-03894 (ER)

*Citizens For Responsibility & Ethics In Wash. v. Trump*,
939 F.3d 131, 137 (2d Cir. 2019) .......... 4

*Davis v. FEC*,
554 U.S. 724, 732, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008)) .......... 3

*D'lil v. Best Western Encina Lodge & Suites*,
538 F.3d 1031, 1040 (9th Cir. 2008) .......... 7

*Del-Orden v. Bonobos, Inc.*,
No. 17 Civ. 2744(Pae), 2017 U.S. Dist. Lexis 209251, 2017 Wl 6547902, At *1 (S.D.N.Y. Dec. 20, 2017) (Engelmayer, J.). .......... 11

*Dominguez v. N.Y. Equestrian Ctr., Ltd.*,
No. 18-Cv-9799 (Ajn), 2020 U.S. Dist. Lexis 179258, At *5 (S.D.N.Y. Sep. 28, 2020) .......... 10

*Germain v. M&T Bank Corp.*,
111 F. Supp. 3d 506, 527 (S.D.N.Y. 2015) .......... 6

*Graves v. Finch Pruyn & Co., Inc.*,
457 F.3d 181, 186 N.3d (2d Cir. 2006)) .......... 14

*Guerrero v. Ogawa USA Inc.*,
2023 US Dist LEXIS 109579, at *5 [SDNY June 26, 2023] .......... 7

*Kittok v. Leslie's Poolmart, Inc.*,
687 F.Supp.2d 953, 959 (C.D.Cal. 2009) .......... 8

*Kreisler v. Second Avenue Diner*,
731 F.3d At 188 .......... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118, 125, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) .......... 6

*Loadholt v ShirtSpace*
2023 US Dist LEXIS 36924, at *10 [SDNY Mar. 6, 2023, No. 22-CV-02870 (ALC)]) .......... 12

*Lunney v. United States*,
319 F.3d 550, 554 (2d Cir. 2003) .......... 4

*Lujan v. Defenders Of Wildlife*
504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1997) .......... 4

*Markett v. Five Guys Enters., LLC,*
No. 17-Cv-788, 2017 Us Dist. Lexis 115212 (S.D.N.Y. July 21, 2017) (Forrest, J.)                    9

*Martinez v. Gutsy LLC,*
2022 US Dist LEXIS 214830 [EDNY Nov. 29, 2022, No. 22-CV-409 (NGG) (RLM)]                          10

*Molski v. Evergreen Dynasty Corp.,*
500 F.3d 1047, 1062 (9th Cir. 2007)                                                                8

*Moore v. Millennium Acquisitions, LLC,*
2015 Wl 769740, At *2 (M.D. Ca. Feb. 23, 2015)                                                     7

*Monegro v. I-Blades, Inc.,*
2023 US Dist LEXIS 43027, at *10 [SDNY Mar. 14, 2023])                                             10

*Mosley v. Kohl's Department Stores, Inc.,*
No. 19-1106 (6th Cir. 2019);                                                                        7

*O'hanlon v. Uber Techs., Inc.*
Civil Action No. 2:19-Cv-00675, 2019 U.S. Dist. Lexis 196029, At *1 (W.D. Pa. Nov. 12, 2019).      7

*Ortiz v. Westchester Med. Ctr. Health Care Corp.,*
No. 15-Cv-5432 (Nsr), 2016 U.S. Dist. Lexis 161777, 2016 Wl 6901314, At *6 (S.D.N.Y. Nov.          7
18, 2016).

*Outley v. City Of New York,*
837 F.2d 587, 595 (2d Cir. 1988)                                                                   8

*Pallozzi v. Allstate Life Ins. Co.,*
198 F.3d 28 (2d Cir. 1999)                                                                         9

*Romero v. 88 Acres Foods, Inc.,*
2022 Us Dist Lexis 9040, At *16 [Sdny Jan. 18, 2022, No. 20-Cv-9215 (Kmw)])                       10,11

*Rosa v. 600 Broadway Partners, LLC,*
175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016)                                                           8

*Sanchez v. NutCo, Inc.,*
No. 20-CV-10107 (JPO), 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022)                              5

*Slade v. Life Spectacular, Inc.,*
2022 US Dist LEXIS 220079 [SDNY Dec. 5, 2022, No. 22-CV-0037 (ALC)]                               10

*Small v. General Nutrition Cos.*,
388 F. Supp. 2d 83 (E.D.N.Y. 2005) ... 7

*Steger v. Franco, Inc.*,
228 F.3d 889, 891 (8th Cir. 2000) ... 7

*Sullivan v. Syracuse Hous. Auth.*,
962 F.2d 1101, 1106 (2d Cir. 1992) ... 6

*Suvino v. Time Warner Cable*,
No. 16-Cv-7046 (S.D.N.Y. Aug. 31, 2017) (Swain, J.) ... 10

*Taverez v. Moo Organic Chocolates, LLC*
No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 154249, 2022 WL 3701508, at *3 (S.D.N.Y. Aug. 26, 2022) ... 11

*Thorne v. Formula 1 Motorsports, Inc.*,
No. 19- Cv-1077 (Jpo), 2019 U.S. Dist. Lexis 220080, At *5 (S.D.N.Y. Dec. 19, 2019) ... 10

*Thurston v. Midvale Corp.*,
39 Cal App 5th 634, 649-650, 252 Cal Rptr 3d 292, 306 [2019] ... 13

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100, 106 (2d Cir. 2008) ... 4

*Wilson v. Pier 1 Imports (US), Inc.*,
411 F.Supp.2d 1196, 1199 (E.D.Cal. 2006) ... 8

*Winegard v Newsday LLC*,
2021 US Dist LEXIS 153995 [EDNY Aug. 16, 2021, No. 19-CV-04420(EK)(RER)] ... 9-11

**Statutes**

42 U.S.C. § 12181 *et seq.* ... *passim*

42 U.S.C. § 12182(a) ... *passim*

42 U.S.C. § 12182(b)(2)(A)(iii) ... *passim*

28 C.F.R. § 36.303(c) ... *passim*

N.Y.C. ADMIN. CODE § 8-101, *et seq.* ... *passim*

N. Y. C.P.L.R. § 302(A)(1)                                                          *passim*

**Rules**
                                                                                    *passim*

FED. R. CIV. P. 12(B)(1)
                                                                                    *passim*

FED. R. CIV. P. 12(B)(2)

Plaintiff, Braulio Thorne, on behalf of himself and all others similarly situated, ("Plaintiff") respectfully submits this memorandum of law in opposition to Defendant's motion to dismiss (Dkt. 31, the "Motion to Dismiss") filed by Capital Music Gear LLC, ("Defendant").

## I.    PRELIMINARY STATEMENT

Defendant is in violation of the American with Disabilities Act of 1990 (the "ADA"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL") because its website is plagued with access barriers that prevent the Plaintiff and all other blind and visually impaired persons from, *inter alia*, navigating the website and completing transactions.

In an attempt to obtain a dismissal of the class action First Amended Complaint filed in this action (Dkt. 23, the "FAC"), Defendant argues that: there is no subject matter jurisdiction over this action because the Plaintiff does not have standing due to lack of injury; the claims are moot;   a Website is not a place of public accommodation; and because the Defendant provides a secondary means of purchasing goods via an alternate method of access such the telephone. These arguments fail because (1) the Plaintiff evidences an injury and standing; (2) the Defendant proffers no evidence to show that the Website is or ever was in compliance or accessible under Title III of the ADA contrary to Plaintiff's allegations of non-compliance; (3) websites are undoubtedly places of public accommodation under the ADA; and (4) Defendant's purported secondary means of access is not fair and equal treatment under the ADA. There is a well-established line of case law in both this District and the Second Circuit (including opinions issued by this Court) holding that a website is a place of public accommodation for purposes of the ADA. Defendant is therefore required to ensure

that its website does not discriminate against the blind and visually impaired such as the

Plaintiff. Accordingly, Defendant's Motion to Dismiss should be denied in its entirety.

## II.     STATEMENT OF FACTS

Plaintiff brought his civil rights action against the Defendant for its failure to design,

construct, maintain, and operate its website to be fully accessible to and independently usable by

him and other blind or visually-impaired people. Defendant's denial of full and equal access to

its website, and therefore denial of its products and services offered thereby, is a violation of

Plaintiff's rights under the Americans with Disabilities Act ("ADA") as well as NYS and NYC

statutes. *FAC* at ¶ 5. Plaintiff is a blind person who requires screen-reading software to vocalize

website content using his computer. Plaintiff uses the terms "blind" or

"visually-impaired" to refer to all people with visual impairments who meet the legal definition

of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

Some blind people who meet their definition have limited vision. Others have no vision. *Id* at ¶

2. Defendant has been and is committing the acts or omissions alleged herein in the Southern

District of New York that caused injury and violated rights the ADA prescribes to Plaintiff and to

other blind and other visually-impaired consumers. A substantial part of the acts and omissions

giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff

has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's

Website while attempting to access the Website from his home in New York County and as a

result he was denied the full use and enjoyment of Defendant's Website. These access barriers

that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times

in the past, and now deter Plaintiff on a regular basis from visiting Defendant's Website. This

includes, Plaintiff attempting to obtain information about Defendant's drumsticks and purchase

said drumsticks. *Id* ¶ 13. Defendant's Website provides consumers with access to an array of goods including audio products (musical instruments and audio equipment) and other goods and services available online, and to ascertain information relating to pricing, shipping, ordering merchandise and return and privacy policies. *Id* ¶ 19. The Plaintiff intends to immediately revisit the Website to purchase drumsticks from the Defendant as soon as the access barriers are removed from the Website. *Id* ¶ 33. During Plaintiff's last visit to Defendant's Website on December 21, 2022, he experienced specified and particularized barriers on the Website that prevented him from utilizing the Website. *Id* ¶ 32. Plaintiff visited the Website in order to buy drumsticks. Plaintiff attempted to purchase drumsticks but was unable to locate pricing and was not able to add the items to the cart due to barriers on Defendant's Website which prevented him from doing so. *Id.* ¶ 31. Plaintiff is a prolific musician and has played drums since age 4 and also teaches percussion to individuals and groups that include other similarly blind persons. *Id.* ¶ 29. Plaintiff has previously purchased audio products (musical instruments and audio equipment) on the internet and wanted to patronize Defendant because Defendant claims that "Capital Music Gear LLC was formed in 2018 in Madison Wisconsin with the sole purpose to improve the online shopping experience for musicians and music enthusiasts." *Id.*

**III.    LEGAL STANDARD 12(b)(1)**

To assert federal subject-matter jurisdiction, a party must have Article III standing — "the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (citing *Davis v. FEC*, 554 U.S. 724, 732, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008)). A standing issue may be raised at any stage in a litigation, *id.* (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)), and "'[t]he party invoking federal jurisdiction bears the burden of establishing the[ ] elements' of

Article III standing," *id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1997)).

On a Rule 12(b)(1) motion, the challenge to subject-matter jurisdiction may be facial or fact-based. *Carter*, 822 F.3d at 55. When considering a facial challenge, a court must determine whether the pleading "allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Id.* (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). For purposes of a Rule 12(b)(1) facial challenge, a court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff asserting jurisdiction. *Id.* (citing *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008); *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). (*Camacho v Vanderbilt Univ.*, 2019 US Dist LEXIS 209202, at *23-24 [SDNY Dec. 4, 2019]).

The U.S. Const. Art. III "requirement that Plaintiffs adequately allege an *injury in fact* "serves to distinguish a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.*** "[A]n identifiable trifle is enough for standing to fight out a question of principle." Because this appeal arises at the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss courts presume that general allegations embrace those specific facts that are necessary to support the claim (citations omitted)." *Citizens for Responsibility & Ethics in Wash. v. Trump*, 939 F.3d 131, 137 (2d Cir. 2019). As the Second Circuit has held that the injury in fact standard is a "low threshold," the facts pled in the FAC are sufficient to find a past injury based on Defendant's failure to make its website accessible. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017)). *Chalas v. Barlean's Organic Oils, LLC*, 2022 US Dist LEXIS

211816, at *6-7 [SDNY Nov. 22, 2022, No. 22 Civ 04178 (CM)]; *see also, Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO), 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022).

IV.    LEGAL STANDARD 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "To state a claim under Title  III [of the Americans with Disabilities Act ("ADA" or "the Act")], [a plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

Title III of the ADA ("Title III) requires "[n]o individual shall be discriminated against on the basis of disability in the ***full*** and ***equal*** enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a) (Emphasis Added). Title III also requires that places of public accommodations provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c); *see also* 42 U.S.C. § 12182(b)(2)(A)(iii).

V.    THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS
MATTER

a.  The Plaintiff Has Standing in this Action Because He Suffered A Concrete and
Particularized Injury.

"To have statutory standing a plaintiff's complaint must fall within the zone of interests protected by the law invoked." *Germain v. M&T Bank Corp.,* 111 F. Supp. 3d 506, 527 (S.D.N.Y. 2015) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) (alterations and quotation marks omitted)). The zone of interests test "seeks to determine whether . . . the plaintiff is within the class of persons sought to be benefitted by the provision at issue." *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003); *see also Sullivan v. Syracuse Hous. Auth.*, 962 F.2d 1101, 1106 (2d Cir. 1992) ("[T]he interest asserted by the plaintiff should be arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (citation and quotation marks omitted)).

Plaintiff has stated alleged an actual injury under Title III of the ADA. The FAC alleges Plaintiff is disabled within the meaning of the ADA; states the specific date of the Plaintiff's attempt to purchase drumsticks from the Defendant's Website as well as the specific barriers encountered by the Plaintiff, all which were futile gestures because the Defendant's Website contains substantial barriers to accessibility which made the Website almost impossible to navigate. In *arguendo*, even if the Plaintiff was able to somehow able to access the Website despite the numerous and substantial barriers, Title III of the ADA requires "[n]o individual shall be discriminated against on the basis of disability in the ***full*** and ***equal*** enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a) (Emphasis Added). Title III also requires that places of public accommodations provide "appropriate services where necessary to ensure effective

6

communication with individuals with disabilities." 28 C.F.R. § 36.303(c); *see also* 42 U.S.C. § 12182(b)(2)(A)(iii), *see also Baughman v. Walt Disney World Co.*, 685 F.3d 1131 (9th Cir. 2012).

The Plaintiff has alleged a plausible intent to return to Defendant's Website. Due to the known barrier that exists (Defendant's Website is inaccessible in violation of Title III of the ADA) and has no intention of being remedied, a visit to Defendant's Website would be a 'futile gesture,' as these violations are ongoing and will continue if the Defendant does not remediate the deficiencies of its Website. *See Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83 (E.D.N.Y. 2005) *See also*, *Steger v. Franco, Inc.*, 228 F.3d 889, 891 (8th Cir. 2000); *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-CV-5432 (NSR), 2016 U.S. Dist. LEXIS 161777, 2016 WL 6901314, at *6 (S.D.N.Y. Nov. 18, 2016). *See also Mosley v. Kohl's Department Stores, Inc.*, No. 19-1106 (6th Cir. 2019); *O'Hanlon v. Uber Techs., Inc.*, Civil Action No. 2:19-cv-00675, 2019 U.S. Dist. LEXIS 196029, at *1 (W.D. Pa. Nov. 12, 2019); *see also, Guerrero v. Ogawa USA Inc.*, 2023 US Dist LEXIS 109579, at *5 [SDNY June 26, 2023].

b.  <u>The Defendant's Prior Litigation History is Irrelevant to the Issue of Standing.</u>

Defendant's claims about the number of prior lawsuits commenced by Plaintiff or its counsel are totally irrelevant.[1] "Nothing in the statutory language of the ADA suggests that a plaintiff's history of ADA litigation history gives rise to a defense against ADA claims." *Moore v. Millennium Acquisitions, LLC*, 2015 WL 769740, at *2 (M.D. Ca. Feb. 23, 2015). The Court "must be particularly cautious about [making] credibility determinations that rely on a plaintiff's past ADA litigation." *See D'Lil v. Best Western Encina Lodge & Suites,* 538 F.3d 1031, 1040 (9th Cir. 2008).

---

[1] "After careful consideration, however, the Court concludes that those similar complaints do not deprive the Court of subject matter jurisdiction in this matter." *Camacho v Vanderbilt Univ.*, 2019 US Dist LEXIS 209202, at *29 [SDNY Dec. 4, 2019])

The Second Circuit Court of Appeals has held that a plaintiff's history of litigation is generally not admissible as evidence in a lawsuit.  *See Kreisler v. Second Avenue Diner, supra*, 731 F.3d at 188; *Outley v. City of New York*, 837 F.2d 587, 595 (2d Cir. 1988); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) (citing Samuel R. Bagnestos, The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation, 54 U.C.L.A. L.Rev. 1, 5 (2006)); *D'Lil, supra,* 538 F.3d at 1039.  Further that the number of ADA cases brought by a particular plaintiff does not demonstrate an improper purpose, wrongdoing, or bad faith. *See e.g. Kittok v. Leslie's Poolmart, Inc.,* 687 F.Supp.2d 953, 959 (C.D.Cal. 2009) ("**The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs any more than it shows a hesitation of businesses to comply with the law**."); and *Wilson v. Pier 1 Imports (US), Inc.,* 411 F.Supp.2d 1196, 1199 (E.D.Cal. 2006) (finding a record of litigiousness did not establish bad faith on part of the plaintiffs). Accordingly, the number of ADA lawsuits filed by a plaintiff cannot be used as a consideration in determining standing or the merits of the claim brought here.

**VI.**    THE PLAINTIFF'S CLAIMS ARE NOT MOOT.

To dismiss a Title III ADA claim as moot, a movant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (emphasis in original) (*quoting Gropper v. Fine Arts Hous., Inc.*, 12 F. Supp. 3d 664, 670 (S.D.N.Y. 2014)). Here, Defendant has not established that "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

*Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610, (2000) (*quoting United*

*States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d

344 (1968)). *(Markett v Five Guys Enters. LLC*, 2017 US Dist LEXIS 115212, at *6 [SDNY July

21, 2017, No. 17-cv-788 (KBF)]). While Defendant claims their website is now in compliance, it

makes no guarantee that their Website will remain in compliance. Should Defendant's Website

come into compliance, it does not moot past harm that occurred as a result of their

inaccessibility to the Plaintiff when the lawsuit was commenced. Further, the Defendant has

offered no evidence relating to the accessibility of the Website, by contrast the Plaintiff included

two separate accessibility reports in the FAC that evidence non-compliance. At the very

minimum, this leaves the issue of accessibility as a question of fact for a jury to decide and not an

issue to be addressed at the Motion to Dismiss stage.

## VII. THE ADA APPLIES TO WEBSITES AND THE DEFENDANT'S WEBSITE IS A PLACE OF PUBLIC ACCOMMODATION

The Second Circuit has held the protections of Title III of the ADA extend beyond

physical structures. *See Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28 (2d Cir. 1999). In

*Pallozzi*, the Court of Appeals held Title III requires not only that a "place of public

accommodation" be physically accessible by the disabled, but also the goods or services there

offered cannot be denied on the basis of disability. *Id.* at 31 ("We believe an entity covered by

Title III is not only obligated by the statute to provide disabled persons with physical access,

but is also prohibited from refusing to sell them its merchandise by reason of discrimination

against their disability."). Consistent with that decision, <u>most</u> District Courts within the

Second Circuit *see* outlier *Wingard*[2] to address this issue has held a company's website that is

---

[2] *Winegard v Newsday LLC*, 2021 US Dist LEXIS 153995 [EDNY Aug. 16, 2021, No. 19-CV-04420(EK)(RER)] is an **outlier** and the Honorable Kimba Wood **criticized** *Winegard* by

integrated with a physical structure constitutes either a "place of public accommodation" or a "service of" a place of public accommodation under Title III of the ADA. *See Suvino v. Time Warner Cable*, No. 16-cv-7046 (S.D.N.Y. Aug. 31, 2017) (Swain, J.); *Andrews v. Blick Art Materials, LLC,* No. 17-cv-767, 2017 U.S Dist. Lexis 121007 (E.D.N.Y. Aug. 1, 2017) (Weinstein, J.); *Markett v. Five Guys Enters., LLC*, No. 17-cv-788, 2017 US Dist. Lexis 115212 (S.D.N.Y. July 21, 2017) (Forrest, J.); *Chalas v. Barlean's Organic Oils, LLC*, 2022 US Dist LEXIS 211816 [SDNY Nov. 22, 2022, No. 22 Civ 04178 (CM)]; *Martinez v. Gutsy LLC*, 2022 US Dist LEXIS 214830 [EDNY Nov. 29, 2022, No. 22-CV-409 (NGG) (RLM)]; *Slade v. Life Spectacular, Inc.*, 2022 US Dist LEXIS 220079 [SDNY Dec. 5, 2022, No. 22-CV-0037 (ALC)]. These District Courts accordingly held a company violates the ADA when it fails to make their websites equally accessible to the visually impaired, as it denies them full and equal opportunity to enjoy the services of the website and physical structures. *Id* Here, the Defendant's Website is undoubtedly a place of public accommodation under 42 U.S. Code § 12181(7)(f). *See also*, *Monegro v. I-Blades, Inc.*, 2023 US Dist LEXIS 43027, at *10 [SDNY Mar. 14, 2023]) ("The ADA's clearly-defined purpose also supports interpreting the statute to apply to websites.") *see also, Dominguez v. N.Y. Equestrian Ctr., Ltd.,* No. 18-cv-9799 (AJN), 2020 U.S. Dist. LEXIS 179258, at *5 (S.D.N.Y. Sep. 28, 2020) (Nathan, J.) (finding that "[the defendant's] website is a place of accommodation" subject to the ADA); *see also Thorne v. Formula 1 Motorsports, Inc.*, No. 19- CV-1077 (JPO), 2019 U.S. Dist. LEXIS 220080, at *5 (S.D.N.Y. Dec. 19, 2019) (finding same); *Romero v. 88 Acres Foods, Inc.*, 2022 US Dist LEXIS 9040, at *16 [SDNY Jan. 18, 2022, No. 20-CV-9215 (KMW)]) (the Court concludes that the term "public accommodation" in Title III of the ADA encompasses

---

holding "this Court does not find Winegard's reasoning compelling."*Romero v. 88 Acres Foods*, Inc., 2022 US Dist LEXIS 9040, at *16 [SDNY Jan. 18, 2022, No. 20-CV-9215 (KMW)]))

private commercial websites that affect commerce **with or without a nexus to a physical place**" *Romero*, at \*19-20) (*emphasis added*). In *Del-Orden v. Bonobos, Inc.*, Judge Engelmayer conducted a comprehensive review of the caselaw, and "join[ed] the growing number of courts to hold that commercial websites qualify as 'public accommodations' within the meaning of the ADA, such that the ADA's protections extend to blind persons who claim discriminatory access to such websites." No. 17 CIV. 2744(PAE), 2017 U.S. Dist. LEXIS 209251, 2017 WL 6547902, at \*1 (S.D.N.Y. Dec. 20, 2017) (Engelmayer, J.). *Romero* at \*15. Recently, in *Chalas v Pork King Good,* 2023 US Dist LEXIS 79100, at \*8-9 [SDNY May 5, 2023, No. 22-cv-03894 (ER)*,* the Court grappled with the statutory implications of holding that a Website without a nexus to a brick and mortar location is not a place of public accommodation. Judge Ramos opposed the outlier holding in *Winegard* when he stated "[a] holding today that limits places of public accommodation to the brick-and-mortar standard would severely hamper Congress' effort to protect disabled persons who want and need access to the growing number of online-only providers of goods and services. Such an anomalous result could not have been Congress' intention. *See S.E.C. v. Rosenthal*, 650 F.3d 156, 162 (2d Cir. 2011) (counseling against interpreting a statute in a way that yields an absurd result). In fact, the ADA was meant to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). For this reason, as this Court previously determined, a stand-alone website qualifies as a place of public accommodation to which Title III of the ADA affords a right of equal enjoyment." Further, Judge Carter cited Judge Caproni's holding in *Taverez v. Moo Organic Chocolates, LLC*, by agreeing that "[a]lthough websites are not specifically mentioned in the statute, the law's explicit purpose and the inclusion of providers that do not require physical entry into a

location to access their goods and services indicate that websites are within the broad reach

Congress intended Title III to have." No. 21-CV-9816 (VEC), 2022 U.S. Dist. LEXIS 154249,

2022 WL 3701508, at *3 (S.D.N.Y. Aug. 26, 2022). *Loadholt v ShirtSpace*, 2023 US Dist

LEXIS 36924, at *10 [SDNY Mar. 6, 2023, No. 22-CV-02870 (ALC)]).

Additionally, the Department of Justice weighed in on the issue of whether the ADA

applies to websites "[w]hen Congress enacted the ADA in 1990, it intended for the ADA to

keep pace with the rapidly changing technology of our times. Since 1996, the Department of

Justice has consistently taken the position that the ADA applies to web content." "Inaccessible

web content means that people with disabilities are denied equal access to information. An

inaccessible website can exclude people just as much as steps at an entrance to a physical

location. Ensuring web accessibility for people with disabilities is a priority for the

Department of Justice. In recent years, a multitude of services have moved online and people

rely on websites like never before for all aspects of daily living." A website with inaccessible

features can limit the ability of people with disabilities to access a public accommodation's

goods, services, and privileges available through that website.[3]

Accordingly, Defendant's Website is undoubtedly a place of public accommodation

subject to the requirements of the ADA.

**VIII.**    ALTERNATIVE MEANS OF ACCESS DO NOT SATISFY THE ADA'S
REQUIREMENTS OF FULL AND EQUAL ACCESS

The type of auxiliary aid or service necessary to ensure effective communication will

vary in accordance with the method of communication used by the individual; the nature, length,

---

[3] Justice Department Issued New Web Accessibility Guidance Under the Americans with Disabilities Act Titled <u>Guidance on Web Accessibility and the ADA</u> (This guidance describes how state and local governments and businesses open to the public can make sure that their websites are accessible to people with disabilities as required by the Americans with Disabilities Act (ADA). *https://beta.ada.gov/web-guidance/* Published March 16, 2022.

and complexity of the communication involved; and the context in which the communication is

taking place. A public accommodation should consult with individuals with disabilities whenever

possible to determine what type of auxiliary aid is needed to ensure effective communication, but

the ultimate decision as to what measures to take rests with the public accommodation, provided

that the method chosen results in effective communication. In order to be effective, auxiliary aids

and services must be provided in accessible formats, in a timely manner, and in such a way as to

protect the privacy and independence of the individual with a disability. *Thurston v Midvale*

*Corp.*, 39 Cal App 5th 634, 649-650, 252 Cal Rptr 3d 292, 306 [2019]. Here, the Defendant has

only stated that there is the existence of designated email address and a direct phone number,

however, there is no mention of a policy and practice to ensure that this method of

communication is effective, or that the lines of communications are open 24/7 and allow the

same effective communication as a sighted person would have accessing the Website. The statute

makes it clear that all aids and services "must be provided in accessible formats, in a timely

manner, and in such a way as to protect the privacy and independence of the individual with a

disability." It was the lack of these universal requirements upon which the trial court based

summary judgment, finding "the email and telephone options do not provide effective

communication 'in a timely manner' nor do they protect the independence of the visually

impaired. (28 C.F.R. § 36.303(c)(1)(ii).)" *Thurston at* 634, 650, 252 Cal Rptr 3d 292, 306.


    **IX.**    PLAINTIFF'S STATE AND CITY LAW CLAIMS SHOULD SURVIVE WITH
THE ADA CLAIM

      Defendant alleges that if this Court finds Plaintiff's failed to state a cognizable

claim under the ADA, then it dooms the remaining claims under the New York State

Human Rights Law ("NYSHRL") and the New York City Human Rights Law

("NYCHRL") (Def MTD pg. 17).

The "New York State [and City] disability discrimination claims are governed by the same legal standards as federal ADA claims." *Rodal v. Anesthesia Grp. of Onondaga,* 369 F.3d 113, 117 n.1 (2d Cir. 2004). Thus, "[i]n general, disability discrimination claims under the NYSHRL rise or fall in tandem with disability discrimination claims brought pursuant to the federal ADA." *Andrews at* 381, 398 (E.D.N.Y. 2017) (citing *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 186 n.3d (2d Cir. 2006)).

Accordingly, since Plaintiff's federal claims survive Defendant's motion to dismiss for the reasons stated above, then the NYSHRL and NYCHRL claims survive as well.

**X.**    CONCLUSION

For the reasons set forth, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated: New York, New York
June 29, 2023